TIMOTHY J. GORRY (SBN 143797)
tgorry@eisnerlaw.com
JON-JAMISON HILL (SBN 203959)
jhill@eisnerlaw.com
JACKIE M. JOSEPH (SBN 151102)
jjoseph@eisnerlaw.com
EISNER, FRANK & KAHAN
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Pictures, LLC, Grosvenor Park Media, L.P. and Kingsgate Films, Inc.

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SGT. JEFFREY S. SARVER,

Plaintiff,

v.

THE HURT LOCKER, LLC; MARK BOAL; KATHRYN BIGELOW; GREG SHAPIRO; NICOLAS CHARTIER; TONY MARK; DONALL MCCLUSKER; SUMMIT ENTERTAINMENT, LLC; VOLTAGE PICTURES, LLC; GROSVENOR PARK MEDIA, LP; FIRST LIGHT PRODUCTIONS, INC.; KINGSGATE FILMS, INC. and PLAYBOY ENTERPRISES, INC., Jointly and Severally,

Defendants.

Case No. 2:10-cv-09034-JHN (JCx)

**NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE §425.16 FILED BY DEFENDANTS THE HURT LOCKER, LLC, GREG SHAPIRO, NICOLAS CHARTIER, VOLTAGE PICTURES, LLC, GROSVENOR PARK MEDIA L.P. AND KINGSGATE FILMS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: March 7, 2011
Time: 2:00 p.m.
Courtroom: 790

[Declaration Of Nicolas Chartier and Declaration Of Timothy J. Gorry filed concurrently herewith]

*Assigned to the Honorable Jacqueline H. Nguyen*

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on March 7, 2011, at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom 790 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Pictures, LLC, Grosvenor Park Media, L.P. and Kingsgate Films, Inc. (collectively, "Defendants") will, and hereby do, move this Court for an order striking Plaintiff's Complaint in its entirety, and each purported claim contained therein, pursuant to Cal. Civ. Proc. Code §425.16. This Motion is based on the fact that the claims pled in Plaintiff's Complaint fall within the scope of speech and conduct protected by Cal. Civ. Proc. Code §425.16, and Plaintiff cannot demonstrate a probability that he will prevail on the merits of his claims. Defendants also seek an award of attorneys' fees against Plaintiff in the amount of $19,155.00 pursuant to Cal. Civ. Proc. Code §425.16(c)(2).

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Nicolas Chartier and Timothy J. Gorry, any reply memorandum submitted by the Defendants, the complete files and records in this action, and such other argument and evidence as may be presented at or before the hearing of this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 13, 2010.

Dated: February 1, 2011

EISNER, FRANK & KAHAN

By: /s/ *Jon-Jamison Hill*
Jon-Jamison Hill
Attorneys for Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Films, LLC, Grosvenor Park Media, L.P. and Kingsgate Films. Inc.

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS ..... 3

III. APPLICABLE STANDARDS OF REVIEW ..... 4

IV. LEGAL ARGUMENT ..... 6

A. Defendants' Alleged Conduct Was In Furtherance Of Their Right To Free Speech In Connection With A Public Issue Or Issue Of Public Interest And Made In A Place Open To The Public. ..... 6

B. Plaintiff Cannot Prevail On His Right Of Publicity Claim. ..... 9

1. The Film Is A Fictional Work That Does Not Use Plaintiff's Name, Photograph Or Likeness. ..... 10

2. Even If The Film Had Made Use Of Plaintiff's Name And Likeness, It Is Entitled To Full First Amendment Protection. ..... 13

C. Plaintiff Cannot Prevail On His Invasion Of Privacy Claim. ..... 14

1. The Film Is Fictional And The Depiction Of Sgt. James Is Not "About Or Concerning" Plaintiff. ..... 15

2. The Film Would Not Be Highly Offensive, Even If Plaintiff Were Identifiable As The Fictional Sgt. James. ..... 15

3. Plaintiff Cannot Proceed With A False Light Claim, Because It Is Superfluous And Duplicative Of Other Claims. ..... 16

D. Plaintiff Cannot Prevail On His Defamation Claim. ..... 17

1. Plaintiff's Claim Is Not Pled With The Requisite Particularity. ..... 17

2. The Film Is Not "Of And Concerning" Plaintiff. ..... 18

3. The Film Is Not Defamatory. ..... 18

E. Plaintiff Cannot Prevail On His Contract Claim. ..... 20

F. Plaintiff Cannot Prevail On His Emotional Distress Claim. ..... 22

G. Plaintiff Cannot Prevail On His Fraud Claim. ........ 22

H. Plaintiff Cannot Prevail On His Constructive Fraud/Negligent Misrepresentation Claim. ........ 23

I. Defendants Are Entitled To An Award Of Attorneys' Fees. ........ 24

V. CONCLUSION ........ 25


EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

## TABLE OF AUTHORITIES

### Federal Statutes And Rules

Fed. R. Civ. P. 9 .......... 22

Fed. R. Evid. 201 .......... 1

### Federal Cases

Abdul-Jabbar v. General Motors Corp., 85 F.3d 407 (9th Cir. 1996) .......... 11

Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003) .......... 4

Brahmana v. Lembo, C 09-00106-RMW, 2010 WL 965296 (N.D. Cal. Mar. 17, 2010) .......... 14, 21

Cantrell v. Forest City Publishing Co., 419 U.S. 245 (1974) .......... 14

Four Navy Seals v. Associated Press, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) .......... 7, 8

Hiken v. Dept. of Defense, 521 F. Supp. 2d 1047 (N.D. Cal. 2007) .......... 7

Hilton v. Hallmark Cards, 580 F.3d 874 (9th Cir. 2009) .......... 6

In re Verisign, Inc. Derivative Litig., 531 F. Supp. 2d 1173 (N.D. Cal. 2007) .......... 23

Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952) .......... 13

Kilopass Tech, Inc. v. Sidense Corp., C 10-02066-SI, 2010 WL 5141843 (N.D. Cal. Dec. 13, 2010) .......... 17

Mayer v. Monroe County Cmty. School Corp., 1:04-cv-1695-SEB-VSS, 2006 WL 693555 (S.D. Ind. Mar. 10, 2006) .......... 7

Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988) .......... 10, 11

Neilson v. Union Bank of Cal., 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......... 23

Newton v. Thomason, 22 F.3d 1455 (9th Cir. 1994) .......... 4

Price v. Stossel, 620 F.3d 992 (9th Cir. 2010) .......... 4

Regents of University of California v. Principal Financial Group, 412 F. Supp. 2d 1037 (N.D. Cal. 2006) .......... 24

Silva v. Hearst Corp., 97-cv-4142-DDP(BQRx), 1997 WL 33798080 (C.D. Cal. Aug. 27, 1997) .......... 22

Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007) .......... 23

Townsend v. Columbia Operations, 667 F.2d 844 (9th Cir. 1981) .......... 1, 12

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

United States *ex rel.* Newsham v. Lockheed Missile & Space Co., Inc., 190 F.3d 963 (9th Cir. 1999) ........ 5, 25

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) ........ 22

Walters v. Fidelity Mortgage of California, Inc., -- F. Supp. 2d --, 2010 WL 3069341 (E.D. Cal. 2010) ........ 20

White v. Samsung, 971 F. 2d 1395 (9th Cir. 1992) ........ 10

**California Statutes And Rules**

Cal. Civ. Proc. Code §425.16 ........ 5, 8, 24

Cal. Civ. Proc. Code §425.17 ........ 5

**California Cases**

Aisenson v. American Broadcasting Co., 220 Cal. App. 3d 146 (1990) ........ 16

Berkley v. Dowds, 152 Cal. App. 4th 518 (2007) ........ 22

City of Cotati v. Cashman, 29 Cal. 4th 69 (2002) ........ 5

City of Los Angeles v. Animal Defense League, 135 Cal. App. 4th 606 (2006) ........ 24

Comedy III Prod., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387 (2001) ........ 14

Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468 (2000) ........ 6

Dyer v. Childress, 147 Cal. App. 4th 1273 (2007) ........ 5

Equilon Enterprises, LLC v. Consumer Cause, Inc., 29 Cal. 4th 53 (2002) ........ 6

Gilbert v. Sykes, 147 Cal. App. 4th 13 (2007) ........ 7

Huntingdon Life Sci. v. Stop Huntingdon Animal Cruelty USA, 129 Cal. App. 4th 1228 (2005) ........ 22

Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728 (2003) ........ 1

Ketchum v. Moses, 24 Cal. 4th 1122 (2001) ........ 24

Kronemyer v. Internet Movie Data Base, Inc., 150 Cal. App. 4th 941 (2007) ........ 7

M.G. v. Time Warner, 89 Cal. App. 4th 623 (2001) ........ 16

Midland Pac. Bldg. Corp. v. King, 157 Cal. App. 4th 264 (2007) ........ 6

Nygard, Inc. v. Uusi–Kerttula, 159 Cal. App. 4th 1027 (2008) ........ 6, 17

Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

(1997) ........ 11, 13, 17

Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798 (2002) ........ 6

Selleck v. Globe International, 166 Cal. App. 3d 1123 (1985) ........ 17

Seltzer v. Barnes, 182 Cal. App. 4th 953 (2010) ........ 6

Sofias v. Bank of Am. Nat'l Trust & Sav. Ass'n., 172 Cal. App. 3d 583 (2009) ........ 21

Souza v. Westlands Water Dist., 135 Cal. App. 4th 879 (2006) ........ 21

Stewart v. Rolling Stone LLC, 181 Cal. App. 4th 664 (2010) ........ 5

Terry v. Davis Community Church, 131 Cal. App. 4th 1534 (2005) ........ 8

Traditional Cat Ass'n, Inc. v. Gilbreath, 118 Cal. App. 4th 392 (2004) ........ 6

Yanase v. Auto. Club of So. Cal., 212 Cal. App. 3d 468 (1989) ........ 23, 24

**State Cases**

P.V. *ex rel* T.V. v. Jaycee Camp, 197 N.J. 132 (2008) ........ 4

People *ex rel.* Maggio v. Charles Scribner's Sons, 130 N.Y.S.2d 514 (1954) ........ 11

**Other Authorities**

Restatement (Second) of Torts § 652E Comment a (1981) ........ 15

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

# I. INTRODUCTION

Sergeant Jeffrey S. Sarver ("Plaintiff") alleges that a diverse group of defendants wrongfully appropriated his personality and illegally portrayed his "personal story" through the Academy Award®-winning film, "The Hurt Locker" (the "Film").[1] Plaintiff's Complaint asserts seven claims against each of the defendants, all of which purportedly arise from the creation, production and dissemination of the Film. However, the Film constitutes First Amendment-protected speech related to a public issue and/or an issue of public interest, made in a public forum. Therefore, Plaintiff's claims fall squarely within the scope of California Code of Civil Procedure §425.16, commonly referred to as the "anti-SLAPP"[2] statute. Because Plaintiff's claims arise from acts in furtherance of free speech that are protected by the anti-SLAPP statute, Plaintiff has the burden of proving a "probability" of prevailing on the merits of each of his claims. Plaintiff cannot make any such showing.

It is apparent from a review of the Film[3] that it is *not* about Plaintiff. It is a fictional work. The fact that the writer who wrote the screenplay for the Film may have drawn inspiration and realistic details from the events he witnessed and people he met while embedded as a reporter with Plaintiff's unit in Iraq does not convert the

---

[1] Named defendants include the Film's writer, director, producers, financiers, and distributor, along with a magazine publisher that had no involvement whatsoever in the Film's creation or exploitation. This Motion is filed by Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Pictures, LLC, Grosvenor Park Media, L.P. and Kingsgate Films, Inc. (collectively, "Defendants"). Defendants anticipate that the remaining defendants will join in this Motion and raise any additional arguments they consider necessary in their respective notices of joinder.

[2] "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 732, n.1 (2003).

[3] The Film, in DVD format, is attached to the accompanying Chartier Declaration as Exhibit "A." Defendants also ask this Court to take judicial notice of the Film. Townsend v. Columbia Operations, 667 F.2d 844, 848-849 (9th Cir. 1981) (documents referred to in and relied on by the complaint are a part of that pleading); see also Fed. R. Evid. 201(b) (allowing judicial notice of any fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Film from fiction to fact, or turn its fictional lead character into Plaintiff.

Plaintiff cannot prevail on his claim for the purported misappropriation of his name and likeness (Count I), because the Film never uses Plaintiff's name or likeness. Even if the Film intended to tell Plaintiff's story or referred to him *by name*, which it does not, the use of Plaintiff's name and likeness in the Film would be exempt from right of publicity claims under well-established California law.

For similar reasons, Plaintiff's claims for false light invasion of privacy and defamation (Counts II and III) fail. The Film is not "of and concerning" Plaintiff, and viewers could not reasonably understand the Film to be about him. Even if the Film's fictional lead character was a portrayal of Plaintiff, the Film neither defames Plaintiff, nor places him in a false light. Most of Plaintiff's claims of disparagement are pure mischaracterizations of the Film itself. The rest would be accurate depictions of Plaintiff. Plaintiff's false light claim also fails as a matter of law, because it is duplicative of his defamation claim.

Through a breach of contract claim (Count IV), Plaintiff seeks to enforce an agreement that journalist Mark Boal ("Boal") allegedly entered into with the U.S. Department of Defense prior to writing the Film's screenplay, which purportedly prevented Boal from reporting personal information about Plaintiff as a condition of Boal's embedment in Iraq. Although Plaintiff alludes to the alleged effect of the agreement, Plaintiff fails to allege any material terms or otherwise describe the agreement. In addition, Plaintiff does not allege and cannot proffer any facts to support his *own* right to relief for the alleged breach of that agreement, to which Plaintiff is not a party. Plaintiff also does not allege (and cannot adduce facts establishing) any basis upon which Defendants could be held liable for any such alleged breach of the agreement.

Plaintiff's claim for intentional infliction of emotional distress (Count V) is legally defective in every respect. Plaintiff fails to allege conduct by Defendants that could be considered extreme and outrageous or beyond the bounds of what a civilized

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

society will tolerate, and the Film itself belies any such claim. Plaintiff also does not allege, and cannot prove, that he sustained emotional distress "so severe that no reasonable man could be expected to endure it." Furthermore, this claim is wholly duplicative of Plaintiff's defamation claim, and it should be dismissed as superfluous.

Finally, Plaintiff has not satisfied the strict pleading requirements for his fraud-related claims (Counts VI and VII). Plaintiff neither alleges, nor can he adduce evidence to demonstrate, that Defendants made *any* representation to him of any kind (much less a misrepresentation that Plaintiff relied on to his detriment), or that anyone who purportedly made misrepresentations to him (*e.g.*, Boal) was acting on Defendants' behalf at the time any alleged representation was made. In connection with his constructive fraud claim, Plaintiff offers no facts to show any legal duty Defendants owed him, or that Defendants breached any such duty, necessary elements for that type of cause of action.

Based on the provisions of California's anti-SLAPP statute, and for the reasons discussed below, Defendants respectfully ask this Court to strike Plaintiff's Complaint in its entirety and award them their attorneys' fees.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Each of the claims asserted in the Complaint relies on a common set of factual allegations.[4] During Plaintiff's deployment in Iraq as an explosive ordinance disposal ("EOD") technician, Defendant Boal, a journalist on a writing assignment for *Playboy* magazine, was embedded with Plaintiff's unit. [Complaint, Dkt. No. 1, ¶ 39.] By following Plaintiff's EOD team on missions and on base, Boal learned a great deal about Plaintiff's personal life, mannerisms and habits. Boal purportedly assured Plaintiff and the other soldiers that he intended to write a story about EOD technicians in general. [Id., ¶¶ 43-44.]

Plaintiff was surprised and unhappy when he learned, in September 2005, that

[4] Defendants provide this recitation to frame the issues for this Motion. Defendants do not concede the truthfulness of any of the Complaint's allegations.

Boal wrote, and *Playboy* magazine published, an article principally about Plaintiff, not EOD technicians in general. [Id., ¶ 53.] Boal later wrote the screenplay for the Film, which was released to the public in June/July 2009. [Id., ¶ 59.]

Plaintiff claims that by writing, producing and distributing the Film, all of the defendants misappropriated his name and likeness, defamed him and invaded his privacy by depicting him in a negative, false light, intentionally inflicted emotional distress upon him, violated the terms of the Defense Department's embedment guidelines, and intentionally, constructively and negligently defrauded him.[5]

## III. APPLICABLE STANDARDS OF REVIEW

California's anti-SLAPP statute establishes a procedure to dismiss, at an early stage, lawsuits that are aimed at chilling a defendant's expression by the threat of costly litigation. Price v. Stossel, 620 F.3d 992, 999 (9th Cir. 2010). Federal courts treat the statute's provisions as "substantive" California law for *Erie* doctrine purposes,[6] and allow its use to challenge state court claims that are asserted in federal actions. Batzel v. Smith, 333 F.3d 1018, 1025-1026 (9th Cir. 2003). As the Ninth

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

---

[5] See Complaint, ¶¶ 21-24 (general allegations and overview), ¶ 71 (misappropriation), ¶ 76 (false light invasion of privacy), ¶ 79 (defamation), ¶ 90 (breach of contract), ¶ 93 (intentional infliction of emotional distress), ¶ 99 (fraud), and ¶ 110 (negligent misrepresentation).

[6] Because this action was transferred from the District of New Jersey, the Court must apply New Jersey's choice of law rules to determine which state's substantive law applies to Plaintiff's tort claims. Newton v. Thomason, 22 F.3d 1455, 1459 (9th Cir. 1994). Assuming an actual conflict of laws exists, New Jersey follows the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (1971) to resolve disputes. P.V. *ex rel* T.V. v. Jaycee Camp, 197 N.J. 132, 142-143 (2008). California has the most significant relationship to Plaintiff's claims. Production of the Film took place in California, meaning the allegedly wrongful conduct also took place in this state. [Certif. Of Nicolas Chartier, Dkt. No. 15-3, ¶10]. Plaintiff concedes that the Film's director, producers, financiers, and distributor are all located in California. [Complaint, ¶¶ 3, 5-14.] Plaintiff also admits that the Film's U.S. debut was in Los Angeles and New York theaters. [Complaint, ¶¶ 21, 58.] New Jersey has virtually no relationship to Plaintiff's claims – as the New Jersey district court observed, "Plaintiff's choice of New Jersey as a forum seems nothing less than arbitrary." [Opinion, Dkt. No. 54, p. 8.]

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

Circuit explained, "[p]lainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." United States *ex rel.* Newsham v. Lockheed Missile & Space Co., Inc., 190 F.3d 963, 973 (9th Cir. 1999).

California's anti-SLAPP statute allows this Court to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution." See Cal. Civ. Proc. Code §425.16(b)(1). An "act in furtherance" includes: (i) any "conduct in furtherance of the exercise of the constitutional . . . right of free speech in connection with a public issue or an issue of public interest," and (ii) "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code §§425.16(e)(3) and (e)(4).[7] Although Defendants need only demonstrate that their conduct falls within one of these categories, the Film satisfies both.

This Court evaluates the instant anti-SLAPP motion in two steps. First, Defendants must make a threshold, *prima facie* showing that the acts of which Plaintiff complains were taken in furtherance of Defendants' right of free speech in connection with a public issue as defined in the statute.[8] If the court finds that such a

---

[7] Motion pictures, including fictional films, are "a 'significant medium for the communication of ideas'" entitled to full First Amendment protection. Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318, 323-324 (1997) (quoting Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501-502 (1952)). The anti-SLAPP statute is expressly applicable to actions "based upon the creation, dissemination [and] exhibition . . . of any . . . motion picture." Cal. Civ. Proc. Code §425.17(d)(2).

[8] A cause of action's label is of no consequence; the critical consideration is whether a claim is based on a defendant's exercise of free speech. City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002). Courts look at the "principal thrust" or "gravamen" of the plaintiff's claim. Dyer v. Childress, 147 Cal. App. 4th 1273, 1279 (2007). The anti-SLAPP statute therefore applies not only to defamation and privacy claims, but also to causes of action for violation of the right of publicity, breach of contract, fraud and infliction of emotional distress, where those claims arise from the exercise of free speech. See e.g. Stewart v. Rolling Stone LLC, 181 Cal. App. 4th 664, 679 (2010) (right of publicity); Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 807

showing has been made, the burden then shifts to the plaintiff to demonstrate a probability of prevailing on the claims; *i.e.*, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. Hilton v. Hallmark Cards, 580 F.3d 874, 883 (9th Cir. 2009); see also Equilon Enterprises, LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

## IV. LEGAL ARGUMENT

### A. Defendants' Alleged Conduct Was In Furtherance Of Their Right To Free Speech In Connection With A Public Issue Or Issue Of Public Interest And Made In A Place Open To The Public.

First, there can be no question that the creation, production and exhibition of the Film in all media, including in theaters and through distribution of DVDs, qualifies for protection under the anti-SLAPP statute. Exhibition of the Film constitutes prototypical First Amendment-protected speech; creation and production of the Film are acts in furtherance of that speech.

Second, there also can be no dispute that the Film's speech relates to a public issue and an issue of public interest. "The definition of 'public interest' within the meaning of [the anti-SLAPP statute] has been broadly construed." Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 481 (2000). Any issue in which the public takes an interest is one of "public interest," and the topic need not be subjectively important or otherwise "significant."[9] Nygard, Inc. v. Uusi–Kerttula, 159 Cal. App. 4th 1027, 1042 (2008) (former employee's statements about his work

(2002) (defamation and invasion of privacy); Midland Pac. Bldg. Corp. v. King, 157 Cal. App. 4th 264, 273-274 (2007) (breach of contract); Seltzer v. Barnes, 182 Cal. App. 4th 953, 962 (2010) (fraud and intentional infliction of emotional distress).

[9] A statement need not be of interest to *every* member of the public. Statements of interest only to a specific segment of the public still qualify for protection. E.g. Traditional Cat Ass'n, Inc. v. Gilbreath, 118 Cal. App. 4th 392, 397 (2004) (cat breeding community); Damon, 85 Cal. App. 4th at 479 (homeowners' association).

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

experience for a celebrity were of public interest; even "tabloid issues" qualify as public interests). Indeed, courts have found certain motion pictures themselves to be matters of public interest. E.g. Kronemyer v. Internet Movie Data Base, Inc., 150 Cal. App. 4th 941, 949 (2007) (the film "My Big Fat Greek Wedding" constituted "a topic of widespread public interest" because it was "a successful independent motion picture"). The speech does not have to advocate a specific position on the subject at issue; it is enough that the speech "contributed to the general debate of the pros and cons of" a subject of public interest. Gilbert v. Sykes, 147 Cal. App. 4th 13, 24 (2007) (review of internet website posting information about plastic surgery); Kronemyer, 150 Cal. App. 4th at 949 (speech is protected if it in some manner "contributes to the public debate").

Here, the Film tells a fictional story about a team of EOD technicians stationed in Iraq, who spend their days going from one bomb disposal mission to another, hoping to survive until their deployment ends. [Chartier Declaration, Ex. A]. The Film generated a great deal of public discussion about the war in Iraq, and the omnipresent danger of the "improvised explosive devices" ("IEDs") used by insurgents. The Film garnered widespread public attention when it was nominated for nine Academy Awards® and won six of them, including the "Oscar" for Best Picture. [Chartier Declaration, Ex. A].

The war in Iraq is, without question, a matter of public interest and a public issue.[10] The war has been covered extensively by all major news outlets since its inception. Indeed, Plaintiff admits that the Defense Department promoted embedment

---

[10] At least one California court determined that the Iraq war is a topic of public concern for the purposes of an anti-SLAPP motion. Four Navy Seals v. Associated Press, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005). Although they were not reviewing an anti-SLAPP motion, other courts also have found the Iraq war to be a matter of "public interest." E.g., Hiken v. Dept. of Defense, 521 F. Supp. 2d 1047, 1056 (N.D. Cal. 2007) (Freedom of Information Act request); Mayer v. Monroe County Cmty. School Corp., 1:04-cv-1695-SEB-VSS, 2006 WL 693555, *11 (S.D. Ind. Mar. 10, 2006) (discussion about the Iraq war was a matter of public interest).



EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

of news reporters which allowed for unprecedented media coverage and gave the public a near first-hand look at the war in real time. [Complaint, ¶¶ 27-29.] The prevalence of IEDs in Iraq and the dangers EOD technicians face in disarming them[11] is merely a more specific focus on one aspect of the Iraq war, and is just as much a public issue and a matter of public interest as the war in general.[12]

Moreover, even if the Film were actually about Plaintiff (which Defendants deny), the Film's qualification as speech on a matter of public interest would be evident from the Complaint itself. Plaintiff alleges that he successfully disarmed more IEDs than any single team in Iraq, and that he is a true hero: "a real life honorable, courageous, and long serving member of our country's armed services" who has been decorated with military honors such as the bronze star. [Complaint, ¶¶ 23, 34, 50.]

Finally, Plaintiff cannot reasonably dispute that the speech contained in the Film was made either in "a place open to the public or a public forum," to the extent that this particular requirement is relevant here.[13] Courts have broadly construed a

---

[11] According to recent statistics promulgated by the Department of Defense, explosive devices accounted for 2,195 deaths and 21,583 injuries to U.S. troops in Operation Iraqi Freedom (abbreviated "OIF" in the reports), significantly more than any other cause of death or injury in theater, so much so that a soldier was almost nine times more likely to be injured by an explosive device than a gunshot. These statistics, published as "Casualty Summary by Reason Code (As of November 10, 2010)," are publically available at: http://siadapp.dmdc.osd.mil/personnel/CASUALTY/gwot_reason.pdf.

[12] This subject is analogous to the narrower issue of "the treatment of Iraqi captives" that the Southern District of California found to be an issue of public concern for anti-SLAPP purposes. Four Navy Seals, 413 F. Supp. 2d at 1149.

[13] To be clear, the public forum requirement found in §425.16(e)(3) applies only to that subsection. It does not apply to a motion based on subsection §425.16(e)(4), which covers "any other conduct in furtherance of the exercise of . . . free speech." Defendants address the public forum requirement here, because subsections (e)(3) and (e)(4) provide independent grounds for dismissal. However, that this Motion addresses both subsections does not change the fact that the anti-SLAPP statute applies equally to statements made in a "public forum" and "private communications concerning issues of public interest." Terry v. Davis Community Church, 131 Cal. App. 4th 1534, 1545 (2005).

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

"public forum" to include "a place that is open to the public where information is freely exchanged," and one that is not limited to a physical setting, but which also includes other forms of public communication. Kronemyer, 150 Cal. App. 4th at 950. Media broadcasts to the public indisputably satisfy this standard. Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 807 (2002). And, as mentioned above, the Complaint admits that the Film underwent a national release in pubic theaters beginning in July 2009, and thereafter was distributed to the public via a "complete nationwide" release in DVD format. [Complaint, ¶¶ 58-60.]

For all of these reasons, Defendants have satisfied their initial burden of proof under the anti-SLAPP statute, and Plaintiff therefore must demonstrate the probability of prevailing on each of his claims. For the reasons set forth below, Plaintiff is incapable of satisfying his burden.

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**B. Plaintiff Cannot Prevail On His Right Of Publicity Claim.**

Plaintiff asserts that he is portrayed by the Film's main character, and that the Film therefore constitutes a misappropriation of his "name and likeness." Of course, Plaintiff admits that the Film's main character does not bear his name. [Id. at ¶ 65.] He does not contend that any photographs or videotapes of him appear in the Film. Nor were Plaintiff's "military occupation specialties" or duties during his time in Iraq unique to him. Plaintiff acknowledges that his EOD team was one of three in the Army's 788th Ordnance Company in which Plaintiff served, and that during his tour of duty, there were approximately 150 trained Army EOD technicians deployed in Iraq. [Id. at ¶¶ 34, 36.]

Plaintiff nevertheless claims, by relying upon a haphazard selection of personal characteristics, background and professional experiences, that any "casual reader of the [previously-published] Playboy Article will easily identify" the Film's fictional Sgt. James as the Plaintiff. [Id. at ¶¶ 65 and 66.] Even if all of Plaintiff's comparisons were accurate – and they are not, as a viewing of the Film itself makes clear – they are insufficient to support a claim for misappropriation of Plaintiff's

likeness based upon the production and distribution of the Film.

**1. The Film Is A Fictional Work That Does Not Use Plaintiff's Name, Photograph Or Likeness.**

California recognizes both a statutory and a common law right of publicity. Cal. Civ. Code §3344 generally prohibits the unauthorized use of another's name, voice, photograph or likeness on or in products, or for purposes of advertising products or services. California's common law similarly prevents the unauthorized appropriation of another's identity for commercial or other advantage. White v. Samsung, 971 F. 2d 1395, 1398 (9th Cir. 1992).

Rather obviously, for either type of claim, the claimant must make a threshold showing that his or her actual name, voice, photograph or likeness was used. Plaintiff admits, as he must, that the Film does not use his name or photograph in any manner. The fictional Sgt. James is played by an actor, so the character also does not use Plaintiff's "likeness" as that term is construed under California law. Id. at 1397 (mechanical robot dressed and positioned like game show personality does not appropriate her "likeness"); Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988) (song performed by a "sound-alike" does not use celebrity's "likeness").

With no use of his likeness, Plaintiff's claim depends upon the assertion that the Film appropriates his "personal story," *i.e.* deploying the fictional Sgt. James to the same base camp where Plaintiff was stationed, imbuing the fictional Sgt. James with a random selection of ordinary characteristics, mannerisms and background that he allegedly shares with Plaintiff, and having the fictional Sgt. James engage in certain military actions purportedly similar to those that Plaintiff undertook during his deployment in Iraq. [Complaint, ¶ 63.] Defendants have found no California decision holding that the use of certain aspects of a person's "personal circumstances" violate either the statutory or common law right of publicity.[14] By contrast, at least one court

---

[14] Judicial decisions that have found misappropriation of a *celebrity's* "identity" without the use of his or her name, voice, photograph or likeness, have done do only



EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

concluded that claimed similarities between the "personal experiences" of a real person and a fictional character *did not* support a right of publicity claim. That case, Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318 (1997), is instructive here.

In Polydoros, the plaintiff sued the producers and distributors of the fictional motion picture "The Sandlot" for misappropriation of his name and likeness, among other claims. One of the film's characters, a 10-year old boy, was named "Michael Palledorous," which was phonetically similar to plaintiff's own. Although the plaintiff conceded that the film was fictional, he nonetheless alleged that his likeness was misappropriated because the character allegedly shared a number of similarities to the plaintiff in his youth, including growing up in a similar setting, wearing eyeglasses and a t-shirt with a particular design, playing sandlot baseball, swimming in a community pool, and being "somewhat obstreperous." Id. at 320-321.

The Polydoros court observed that similar claims "have been rejected by the courts when there is merely alleged to be some resemblance between an actual person and a character in a work of fiction." Id. at 322. The court concluded that "the rudimentary similarities in locale and boyhood activities do not make *The Sandlot* a film about [the plaintiff's] life" and that the "faint outlines [the plaintiff] has seized upon do not transform the fiction into fact." Id. at 323.[15] Accordingly, here, even if

---

where a defendant used a distinctive element readily and uniquely identifiable with the celebrity plaintiff in connection with some implied commercial sponsorship by the celebrity. E.g. Midler, 849 F.2d at 463-64 (use of "sound-alike" to perform song closely identified with famous singer in television commercial); Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 415-416 (9th Cir. 1996) (commercial use of athlete's former name). These cases are inapplicable here, because Plaintiff is not a celebrity and Plaintiff does not claim his likeness was appropriated for commercial sponsorship of some product or brand.

[15] The Polydoros decision is particularly apt because the film's writer had been a schoolmate of the plaintiff and drew from his childhood memories in writing that screenplay. The Polydoros court's recognition of and quotation from an earlier New York decision, People *ex rel.* Maggio v. Charles Scribner's Sons, 130 N.Y.S.2d 514 (1954), also directly apply to Plaintiff's misappropriation claims here:

Plaintiff had accurately compared himself to the Film's fictional main character, these "personal circumstances" would be insufficient as a matter of law to support a claim for misappropriation of Plaintiff's likeness.

In fact, however, the Complaint presents a decidedly inaccurate comparison of Plaintiff to the fictional Sgt. James. The *Playboy* magazine article[16] and the Film evidence that Plaintiff and the Film's fictional main character share few characteristics beyond those that would be common to many EOD technicians stationed in Iraq and/or members of the military in general.

Most of Plaintiff's comparisons are generic or abstract similarities that could not conceivably be considered distinctive to Plaintiff.[17] Even if they are accurate,

---

> It is generally understood that novels are written out of the background and experiences of the novelist. The characters portrayed are fictional, but very often they grow out of real persons the author has met or observed. This is so also with respect to the places which are the setting of the novel. The end result may be so fictional as to seem wholly imaginary, but the acorn of fact is usually the progenitor of the oak, which when fully grown no longer has any resemblance to the acorn. In order to disguise the acorn and to preserve the fiction, the novelist disguises the names of the actual persons who inspired the characters in his book. Since a novel is not biography, the details of the character's life and deeds usually have, beyond possible faint outlines, no resemblance to the life and deeds of the actual person known to the author. Thus, the public has come to accept novels as pure fiction and does not attribute their characters to real life.

[16] As with the Film, Plaintiff's Complaint repeatedly references and heavily relies upon the *Playboy* article, and the Court can appropriately review the article to decide the propriety of Plaintiff's claims. See Townsend, 667 F.2d at 848-849 (documents referred to in and relied on by the complaint are a part of that pleading).

[17] It is of no legal consequence that Plaintiff and the actor who plays Sgt. James might be of the same age or height (even assuming that either is true). Many military personnel have young children at home (as it happens, Plaintiff had an 8-year old boy, while the Sgt. James character has a baby boy), and undoubtedly have photographs of their children among their personal possessions. It is also common (and, therefore, legally insignificant) that both Plaintiff and the fictional Sgt. James experienced relationship problems – in fact, the *Playboy* article referenced throughout the Complaint quotes Plaintiff as remarking that "EOD" stands for "every one divorced." And it is hardly unique that members of the Armed Services might refer to each other as "rednecks." Military personnel are commonly known to drink alcohol when off-

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

many of these claimed similarities cannot be discerned by readers of the *Playboy* article, which is the *only* claimed means by which viewers conceivably could associate the Sgt. James character with Plaintiff.[18] Finally, a number of the alleged similarities are simply false.[19] Viewed without the filter of Plaintiff's self-serving comparisons, this Court readily can conclude that the Sgt. James character is not intended as, and reasonable viewers could not understand that character to be, a portrayal of Plaintiff.

**2. Even If The Film Had Made Use Of Plaintiff's Name And Likeness, It Is Entitled To Full First Amendment Protection.**

Under California law, noncommercial speech is accorded full First Amendment protection. These constitutional guarantees are no less diminished for "popular entertainment" or "works of fiction." Polydoros, 67 Cal. App. 4th at 324. "[M]otion pictures are a significant medium for the communication of ideas." Joseph Burstyn, 343 U.S. at 501. That motion pictures are "sold for profit does not prevent them from

---

duty (and are so depicted in numerous films and television programs). Finally, that Plaintiff and the fictional Sgt. James may treat their work as more important than their family is hardly unique to them, much less to military personnel in general.

[18] No reader of the *Playboy* article could possibly know that Plaintiff used the phrases "hurt locker" or "war is a drug," because neither is mentioned in the article. Readers would not know whether Plaintiff and the Film's actor are the same age or height, or that they share similar accents, dialects, expressions, mannerisms, or personality. The *Playboy* article does not describe Plaintiff as sleeping in his bed wearing his bomb helmet and underwear, or taking a shower in full uniform.

[19] For example, Plaintiff has never been married; at the time of the *Playboy* article, he had one 8-year old son with an ex-girlfriend, and a different girlfriend was due to give birth to another child of his. The fictional Sgt. James, by contrast, has a wife and baby boy. Plaintiff also asserts that he and the Sgt. James character have the same military background, but Sgt. James is portrayed as having previously been an EOD technician in Afghanistan, while the *Playboy* article states that Plaintiff had only been an EOD technician in peacetime operations prior to his deployment in Iraq. Finally, Plaintiff's assertion that both he and the fictional character decorated their sleeping areas with a map of Iraq (which is hardly distinctive) is misleading, because while Plaintiff's actual area was decorated like a "command center" with maps and pictures of IEDs, the fictional Sgt. James had nothing of the sort; just a map on his wall.



EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

being a form of expression whose liberty is safeguarded by the First Amendment." Id. In other words, the inclusion of a person's name, voice, photograph or likeness in an expressive work that enjoys First Amendment protection does not constitute "commercial speech," even if the expressive work is intended for purchase or profit.[20] Moreover, when an expressive work contains significant "transformative" elements, *i.e.*, when it contains expressive content and is more than a "mere likeness or literal depiction" of a person, "First Amendment protection outweighs whatever interest the state may have in enforcing the right of publicity." Comedy III Prod., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 406 (2001).

Even if the Film had been expressly about Plaintiff, and had used his name, actual photographs or video of him and his entire life story, Plaintiff still would not have a viable claim for misappropriation of his likeness. The Film unquestionably is a transformative, expressive work, and the protections of the First Amendment outweigh any right of publicity that Plaintiff otherwise might possess.

**C. Plaintiff Cannot Prevail On His Invasion Of Privacy Claim.**

To state a claim for false light, a plaintiff must allege and prove facts establishing that the defendant disclosed information about or concerning the plaintiff that was presented as factual, but which is actually false, and the disclosure placed the plaintiff in a false light that would be highly offensive to a reasonable person. Brahmana v. Lembo, C 09-00106-RMW, 2010 WL 965296, *4 (N.D. Cal. Mar. 17, 2010).[21] Plaintiff's claim is defectively pled and fails as a matter of law.

---

[20] This principle was recently affirmed in Stewart v. Rolling Stone LLC, 181 Cal. App. 4th 664 (2010), where the court dismissed "indie rock" musicians' asserted claims based on the use of their band names in an editorial feature that was surrounded by a cigarette advertisement, finding that the feature itself was noncommercial speech as a matter of law. Id. at 683.

[21] "[T]o avoid a conflict with First Amendment rights, courts have narrowly construed the highly offensive standard." Brahmana, 2010 WL 965296, *4 (citations omitted). The First Amendment also requires a plaintiff to plead and prove "actual" or "constitutional" knowledge when the publication at issue concerns a matter of public interest. Cantrell v. Forest City Publishing Co., 419 U.S. 245, 249-250 (1974).

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**1. The Film Is Fictional And The Depiction Of Sgt. James Is Not "About Or Concerning" Plaintiff.**

Plaintiff concedes that the Film includes a disclaimer that it is a work of fiction and any similarity to real people and events is entirely coincidental and unintentional. [Complaint, ¶ 63.] He also concedes that the Film's main character does not use Plaintiff's name. [Id. at ¶ 65.] Moreover, for the reasons discussed in Section IV.B.1, above, no viewer of the Film reasonably could identify Plaintiff with the Sgt. James character based upon the random, generic and inaccurate similarities alleged by Plaintiff. Since the Film does not purport to be, and cannot reasonably be understood as, a factual depiction of Plaintiff, Plaintiff cannot establish the basic elements of a false light claim. Restatement (Second) of Torts § 652E Comment a (1981) ("There is no cause of action if the statement obviously purports to be fictitious").

**2. The Film Would Not Be Highly Offensive, Even If Plaintiff Were Identifiable As The Fictional Sgt. James.**

Even if the fictional Sgt. James character reasonably could be understood by viewers as a loose portrayal of Plaintiff (which it is not), Plaintiff's false light claim fails, because such a connection could not be considered highly offensive to a reasonable person. Plaintiff alleges that he has been placed in a false light in two ways. First, in a scene close to the conclusion of the Film, Sgt. James confesses to his infant son that there is only one thing that he knows he loves. As the Film closes, Sgt. James is then seen commencing another tour of duty in Iraq. [Complaint, ¶ 68.] Plaintiff distorts this scene in his Complaint, alleging that the character "explains to his young son that he essentially does not love him, and that the only thing plaintiff loves now is 'war.'" [Id.] Perhaps even more importantly, this portrayal hardly could be offensive to Plaintiff, given his actual circumstances.[22] See e.g. Aisenson v.

[22] According to the *Playboy* article, Plaintiff was stationed in Wisconsin while his son lived with his ex-girlfriend in Michigan. When Plaintiff returned from his deployment in Iraq, instead of visiting his son, he went on a hunting trip. He did not visit his son until several weeks after his return, all the while feeling that he had to transfer to

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

American Broadcasting Co., 220 Cal. App. 3d 146, 161 (1990) (fair, yet unflattering, depictions are not actionable).

Second, Plaintiff claims that the Film unfairly portrays him "as a reckless, gung ho war addict who has a morbid fascination with death." [Id.] This description, too, is self-servingly inaccurate. The Sgt. James character is not a one-dimensional "war addict." The Film portrays a complex fictional soldier with conflicting emotions about his job, which is thrilling but also places him under the constant threat of death. And again, given Plaintiff's own description of how he feels when engaged in his work, this depiction could hardly be offensive to Plaintiff, even if the fictional character had been intended as a portrayal of him.[23]

False light claims are limited to the most egregious of circumstances. See e.g. M.G. v. Time Warner, 89 Cal. App. 4th 623, 631 (2001) (publication of photograph suggesting that plaintiffs were either victims or perpetrators of child molestation was highly offensive). Assessed under this standard, which must be construed narrowly to avoid conflict with the First Amendment, no reasonable person could consider the Film's portrayal of a heroic, but flawed, American bomb disposal technician to be highly offensive. The Film's depiction of the fictional Sgt. James does not even come close to supporting the necessary element of "offensiveness."

**3. Plaintiff Cannot Proceed With A False Light Claim, Because It Is Superfluous And Duplicative Of Other Claims.**

Plaintiff false light invasion of privacy claim is based upon the same allegedly false portrayal of him that underlies his defamation claim. As discussed above, the false light claim is based upon his alleged depiction as someone who loves war more

---

another unit so he could get back to the war quickly. "I need to get back to Iraq," he told journalist Boal.

[23] According to the *Playboy* article, Plaintiff describes the feeling of approaching an IED as the "morbid thrill;" he feels "a methlike surge of adrenaline" and "hears his heart thump and his breath rasp." He tells journalist Boal, "I love all that stuff. Anything that goes boom. It's addictive."

than his son and as a "reckless, gung ho war addict." [Complaint, ¶ 68.] The same allegedly false portrayal underlies Plaintiff's defamation claim, as well. [Id. at ¶ 79.] Where a plaintiff asserts additional causes of action based on the same allegations as a defamation claim, the additional claims should be dismissed as superfluous. Selleck v. Globe International, 166 Cal. App. 3d 1123, 1136 (1985). As a matter of law, the false light claim therefore is superfluous and should be dismissed.

**D. Plaintiff Cannot Prevail On His Defamation Claim.**

To recover for defamation, a plaintiff must establish that the defendant made a "provably false" statement of fact of and concerning the plaintiff which exposes the plaintiff "to hatred, contempt, ridicule, or obloquy." Nygard, Inc., 159 Cal. App. 4th at 1047-1048. On the other hand, "there is no law providing relief for defamation by a fictional work which does not portray the plaintiff at all." Polydoros, 67 Cal. App. 4th at 326.[24] Lastly, "the general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." Kilopass Tech, Inc. v. Sidense Corp., C 10-02066-SI, 2010 WL 5141843, *5 (N.D. Cal. Dec. 13, 2010). Thus, Plaintiff's defamation claim fails.

**1. Plaintiff's Claim Is Not Pled With The Requisite Particularity.**

Although Plaintiff alleges that the Film contains "several false and defamatory statements concerning the Plaintiff," he does not specifically identify the words constituting the alleged defamation, much less allege them verbatim. See Kilopass Tech., Inc., 2010 WL 5141842 at *5-6 (dismissing defamation claim for failure to plead actionable statement with requisite specificity). Instead, Plaintiff provides a list of scenes from the Film that Plaintiff self-servingly and inaccurately describes so as to make them appear to be disparaging. [Complaint, ¶ 79.] These summary allegations

[24] Moreover, "rhetorical hyperbole and vigorous epithets are not defamatory" as a matter of law. Id. at 326-327 (statements allegedly referring to plaintiff as "Squints," "little pervert," "pretty crappy," "dead fish," "reject," and "an insult to the game" are not actionable as defamatory statements of fact).

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

do not by themselves satisfy Plaintiff's pleading requirement, and his defamation claim therefore could be dismissed.

**2. The Film Is Not "Of And Concerning" Plaintiff.**

As with his privacy claims, Plaintiff's defamation claim relies on the assertion that the Film's Sgt. James character is a portrayal of Plaintiff. Plaintiff therefore anchors his claim to the same list of alleged similarities between him (as allegedly described in the *Playboy* article) and the Film's portrayal of the Sgt. James character. However, like "The Sandlot" in Polydoros, the Film manifestly is not about Plaintiff; it is about a fictional character. For the reasons set forth in Section IV.B, above, the claimed similarities either: (i) are generic, abstract and/or common to any number of military personnel (such as being a father and possessing a photograph of his child, experiencing difficulties in one's personal relationships, drinking alcohol while off-duty or being of a certain age or height); (ii) cannot be discerned from the *Playboy* article (such as Plaintiff's accent or dialect, his alleged use of certain terms or phrases, wearing a helmet to bed or showering in full uniform); or (iii) simply do not exist (such as both characters having ex-wives and the same combat experience). No viewer of the Film reasonable could conclude that the fictional Sgt. James is intended to portray Plaintiff or that the Film as a whole depicts Plaintiff's life.

**3. The Film Is Not Defamatory.**

Even if viewers of the Film believed that the Sgt. James character is "of and concerning" Plaintiff, the Film as a matter of law does not make false statements of fact about Plaintiff that would injure him in his reputation or which would subject him to hatred, contempt or ridicule. The Complaint identifies five ways in which the Film purportedly defames Plaintiff. He is allegedly portrayed: (1) "as a bad father who did not love his son;" (2) as though he were "embarrassed or ashamed of his son in the scene where photos of Plaintiff's son were found stashed in a [sic] hidden in a box;" (3) as a "'messed up'/'reckless' soldier whose success was attained because Plaintiff had no respect or compassion for human life;" (4) "as an unstable person who is

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

fascinated with/addicted to the thrill of war and death, who enjoys playing cruel practical jokes on people;" and (5) "as a soldier who violates military rules and regulations (*i.e.* getting drunk after missions; taking off his communication headset during missions)." [Complaint, ¶ 79.]

However, viewing the Film as a whole and in context reveals the fallacy of several of Plaintiff's assertions. The fictional Sgt. James cares for his son; he just may love his job more, and he is troubled by this realization.[25] Sgt. James does not display any embarrassment or shame about his son in the Film; the photographs of his son are stored in a crate merely because they are personal to him. Nor does the Film depict the fictional Sgt. James as lacking respect or compassion for human life, much less having attained success as a result of such an attitude. To the contrary, the Film repeatedly depicts Sgt. James' compassion for Iraqi citizens whose lives are affected by the war, including a young boy with whom he plays soccer and from whom he buys DVDs, a boy who was killed and had a bomb placed in his body cavity, and an adult who has been locked into a suicide bomb vest against his will. Also, Plaintiff's description of Sgt. James' playful relationship with the young DVD seller as one in which Sgt. James enjoys playing cruel jokes is an utter distortion of the relevant scene.

As for the Complaint's other assertions, a simple review of the *Playboy* article discloses their accuracy. Plaintiff cannot possibly be defamed by imputing to him a fascination with and/or an addiction to the thrill of his job; he is quoted in the *Playboy* article as saying that "anything that goes boom [is] addictive," and describing the feeling of approaching an IED as the "morbid thrill." The *Playboy* article also provides ample support for Plaintiff drinking alcohol after missions and turning off his headset during missions.[26] In any event, none of these depictions, even if they were

[25] Based upon the *Playboy* article, this would be a fair description of Plaintiff, as well (except that Plaintiff is not described in the article as being troubled by this).

[26] Among other things, the *Playboy* article describes Plaintiff as asking for a beer as soon as he removed his bomb suit, and inviting one of his team members to go drinking with him. The article also reports that there is a radio receiver in the bomb

entirely false as to Plaintiff, fairly and reasonably possess a defamatory meaning when viewed in the context of the Film.

**E. Plaintiff Cannot Prevail On His Contract Claim.**

Plaintiff's breach of contract claim is premised on the allegation that the U.S. Department of Defense forced Playboy and journalist Boal to sign a contract through which they agreed to be bound by certain "Ground Rules" applicable to embedded media members. [Complaint, ¶¶ 83, 84.][27] As an initial matter, the Complaint does not include a copy of this supposed agreement or the "Ground Rules" as exhibits, nor does the Complaint list the material terms of either document in *haec verba*. This itself is grounds for dismissal of the claim. Walters v. Fidelity Mortgage of California, Inc., -- F. Supp. 2d --, 2010 WL 3069341, *11 (E.D. Cal. 2010). It is not, however, the only defect.

Conceding he is not himself a signatory to the "Ground Rules," Plaintiff cursorily asserts that he must be an intended third party beneficiary of this agreement.[28] [Id. at ¶ 86.] Plaintiff then concludes that he is entitled to enforce this supposed agreement not only against Playboy and Boal, but also *against Defendants*, who financed, produced and distributed the Film several years later, because the "remaining Defendants" allegedly are "privies" to this contract "by virtue of their agency and/or contractual relationship" with Boal and Playboy in connection with the Film. [Id. at ¶ 88.] Based on these allegations, there is no probability that Plaintiff

---

suit that Plaintiff wears, "but it's turned off to avoid sending stray radio waves that could set off the IED."

[27] According to the Complaint, these "Ground Rules" supposedly "were implemented for the purpose of protecting the health and safety of the military service members," among other reasons. [Id. at ¶ 85.]

[28] Plaintiff also alleges that there also was an express and/or implied contract between Playboy and Boal, on the one hand, and Plaintiff, on the other, which included refraining from publishing specific personal information about Plaintiff. [Id. at ¶ 87.] The Complaint offers no further details of this supposed agreement, such as when it supposedly was entered into, by whom and how, whether it is written, oral or implied by conduct, or the circumstances from which any implied contract allegedly arose.





EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

will prevail on this contract claim for two principal reasons.

First, to determine third party beneficiary status, the party claiming "third party beneficiary [status] must show the contract was made *expressly* for his or her benefit." Sofias v. Bank of Am. Nat'l Trust & Sav. Ass'n., 172 Cal. App. 3d 583, 587 (2009) (original emphasis). "[I]t is not enough that the third party would have incidentally have benefited from performance." Souza v. Westlands Water Dist., 135 Cal. App. 4th 879, 891 (2006). In other words, "the circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement." Id. Furthermore, an intended beneficiary "may not obtain a greater recovery than that which would have been available to the promisee." Id. at 894-895. Plaintiff's allegations fail to meet this standard, because the Complaint contains no allegations demonstrating any intention by the Department of Defense, Boal or Playboy that Plaintiff should receive a benefit that he could enforce in the courts through a suit for monetary damages. At most, the alleged terms of the contract may provide an incidental benefit to Plaintiff.

Second, Plaintiff has not alleged and can offer no evidence establishing a factual or legal basis upon which the moving Defendants could be held liable for either Boal's or Playboy's supposed breach of an agreement with the Department of Defense that purportedly was executed in connection with Boal's embedment in Iraq for the purpose of reporting on actual events taking place during the war. Merely alleging "the existence of a principal-agent relationship, without providing factual support for this conclusory allegation, is insufficient." Brahmana, 2010 WL 965296 at *7 (dismissing claims against company where there was no factual support for agency claims). Plaintiff cannot establish that an agency relationship existed between Boal/ Playboy and any of the other Defendants at the time the agreement with the Defense Department was supposedly executed; or that any moving Defendant is a successor-in-interest to either Boal or Playboy with respect to such an agreement.

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**F. Plaintiff Cannot Prevail On His Emotional Distress Claim.**

To prevail on a claim for intentional infliction of emotional distress, "a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation." Huntingdon Life Sci. v. Stop Huntingdon Animal Cruelty USA, 129 Cal. App. 4th 1228, 1259 (2005). The conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized society." Berkley v. Dowds, 152 Cal. App. 4th 518, 533 (2007). Moreover, an intentional infliction of emotional distress claim must be dismissed if it is duplicative of plaintiff's defamation claim. Silva v. Hearst Corp., 97-cv-4142-DDP(BQRx), 1997 WL 33798080, *3 (C.D. Cal. Aug. 27, 1997) (dismissing emotional distress claim based on same allegations as defamation claim).

The Complaint does not satisfy any of these requirements, nor can Plaintiff prove them. First, the distribution of the Film can hardly be characterized as outrageous or intolerable to a civil society. Second, since the Film was clearly intended to be fictional, Plaintiff cannot establish that it was produced and released either with the intention of causing Plaintiff emotional distress or with reckless disregard for that possibility. Finally, Plaintiff has not alleged, and he cannot prove, that he actually suffered severe emotional distress as a result of the distribution of the Film. And, as a legal matter, this claim is superfluous because it is based on the same allegations as Plaintiff's defamation claim, and it should be dismissed on that basis.

**G. Plaintiff Cannot Prevail On His Fraud Claim.**

When pleading fraud, a plaintiff must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[T]o state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule"). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged

fraudulent scheme.'" Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) (conclusory allegation that a defendant "knew" about co-defendants' fraudulent conduct and was "acting in concert" with co-defendants was insufficient as a matter of law when all specific misconduct was attributed to co-defendants).

Plaintiff's fraud claim patently fails to satisfy these pleading requirements as to the moving Defendants. All that Plaintiff alleges is that during his embedment with Plaintiff's unit in Iraq, *Boal* represented that he planned to report on the unit's operations in general, and never disclosed that he was interviewing and photographing Plaintiff in order to write an article or make a motion picture about Plaintiff. [Complaint, ¶¶ 98-99.] Plaintiff then claims to have relied upon all Defendants' misrepresentations by disclosing personal information to *Boal*. [Id. at ¶ 105.] Plaintiff does not allege that anyone employed by any of the other Defendants has ever made any representations to Plaintiff of any kind, and Plaintiff offers no factual or legal basis for ascribing to other Defendants any alleged representations or nondisclosures by Boal. Because, in fact, none of the other Defendants communicated with Plaintiff at all, Plaintiff is unable to meet his burden of proof on this claim.

**H. Plaintiff Cannot Prevail On His Constructive Fraud/Negligent Misrepresentation Claim.**

Plaintiff's claim for constructive fraud and/or negligent misrepresentation is subject to, and fails to satisfy, the same heightened pleading standards that govern his claim for intentional misrepresentation. In re Verisign, Inc. Derivative Litig., 531 F. Supp. 2d 1173, 1219 (N.D. Cal. 2007) (constructive fraud "is nevertheless fraud . . [and] must be pled with particularity"); Neilson v. Union Bank of Cal., 290 F. Supp. 2d 1101, 1141-1142 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."). For this type of claim, Plaintiff must plead the basis upon which each defendant owed Plaintiff some legal duty of care. Yanase v. Auto. Club of So. Cal., 212 Cal. App. 3d 468, 473 (1989) (negligent misrepresentation claim

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

fails where publisher of city guide owed no duty of care to reader).

Plaintiff has never had any type of relationship with any of the moving Defendants. His Complaint includes no allegations supporting Plaintiff's bare conclusion that moving Defendants owed Plaintiff a duty of care or a duty of disclosure and, because they had no relationship and no communications whatsoever, Plaintiff also will be unable to establish any such duty.[29] Plaintiff also offers no factual or legal basis for ascribing to moving Defendants any alleged representations or nondisclosures that might be attributable to anyone else. In addition, California does not recognize a "negligent misrepresentation" by omission, the exact type of claim Plaintiff seeks to bring here. Regents of University of California v. Principal Financial Group, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) (California law "does not impose liability for negligent omissions; some 'positive assertion' is required").

### I. Defendants Are Entitled To An Award Of Attorneys' Fees.

The California Legislature has authorized attorneys' fees awards for anti-SLAPP motions. Indeed, the "prevailing defendant" on the motion to strike "*shall* be entitled" to recover his or her attorney fees and costs. Cal. Civ. Proc. Code §425.16(c). As indicated by the plain language of the statute, the fee award is mandatory. Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001); City of Los Angeles v. Animal Defense League, 135 Cal. App. 4th 606, 627 (2006) (explaining that the purpose of the fees provision is both to discourage meritless lawsuits and to provide financial relief to SLAPP lawsuit victim). And the Ninth Circuit has expressly held that the availability of fees and costs under California's anti-SLAPP statute is not in conflict with the Federal Rules, and will be applied by federal courts. United States v.

[29] Negligent misrepresentation claims require explicit allegations of a cognizable legal duty. Yanase, 212 Cal. App. 3d at 473 (negligent misrepresentation claim failed where publisher of city guide owed no duty of care to reader). A constructive fraud claim requires more than just a run-of-the-mill duty. Plaintiff must show a *fiduciary* duty between himself and each defendant. See Wilkins v. National Broadcasting Co., Inc., 71 Cal. App. 4th 1066, 1082 (1999).

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 970-73 (9th Cir. 1999). Here, moving Defendants incurred no less than $19,155.00 preparing, drafting and submitting the instant motion. [Decl. of Timothy J. Gorry, ¶¶3-5.] Accordingly, Defendants ask this Court to award them statutory attorneys' fees in that amount.[30]

## V. CONCLUSION

Each and every claim stated within Plaintiff's Complaint falls within the purview of California's anti-SLAPP statute. Plaintiff cannot demonstrate a probability that he will prevail on the merits of those claims. Accordingly, Defendants respectfully asks this Court to grant the instant Motion in its entirety, strike Plaintiff's Complaint, and award them statutory attorneys' fees against Plaintiff.

Dated: February 1, 2011

EISNER, FRANK & KAHAN

By: /s/ *Jon-Jamison Hill*
Jon-Jamison Hill
Attorneys for Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Films, LLC, Grosvenor Park Media, L.P. and Kingsgate Films. Inc.

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

[30] Counsel for other named co-defendants collaborated in the drafting of this Motion, and those co-defendants also incurred attorneys' fees. Moving Defendants anticipate those fee requests will be addressed in other defendants' notices of joinder.

# PROOF OF SERVICE

STATE OF CALIFORNIA,

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Eisner, Frank & Kahan, 9601 Wilshire Boulevard, Suite 700, Beverly Hills, California 90210.

On February 1, 2011, I served a copy of the foregoing document described as **NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE §425.16 FILED BY DEFENDANTS THE HURT LOCKER, LLC, GREG SHAPIRO, NICOLAS CHARTIER, VOLTAGE PICTURES, LLC, GROSVENOR PARK MEDIA L.P. AND KINGSGATE FILMS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action addressed as follows:

Linda George, Esq.
577 Summit Avenue
Hackensak, NJ 07601
***Attorney for Plaintiff***

Jeremiah Reynolds, Esq.
KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 Wilshire Boulevard
Santa Monica, CA 90401
***Attorneys for Mark Boal & Kathryn Bigelow***

Todd Weglarz, Esq.
FIEGER, FIEGER, KENNEY, *ET AL.*
19390 West 10 Mile Road
Southfield, MI 48075-2463
***Attorneys for Plaintiff***

Anthony M. Glassman, Esq.
Steven Berkowitz, Esq.
GLASSMAN, BROWNING, *ET AL.*
360 North Bedford Drive #204
Beverly Hills, CA 90212
***Attorneys for Playboy Enterprises, Inc.***

Stephen M Orlofsky, Esq.
BLANK ROME LLP
301 Carnegie Center 3rd Floor
Princeton, NJ 08540
***Attornevs for Mark Boal & Kathrvn Biaelow***

☒ **BY MAIL** (CCP §1013(a) and (b)): I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. Postal Service on the same day this declaration was executed, with postage thereon fully prepaid at 9601 Wilshire Boulevard, Suite 700, Beverly Hills, California 90210, in the ordinary course of business.

Executed on February 1, 2011, at Beverly Hills, California.

☒ (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

| | |
|---|---|
| VANESSA MCCLOUD | /s/ *Vanessa McCloud* |
| *Print name* | *Sianature* |

EISNER, FRANK & KAHAN
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201